IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 8, 2021

## STATE OF TENNESSEE v. JOSEPH GRIGGS

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 18-CR-168     J. Weber McCraw, Judge**

### No. W2020-01686-CCA-R3-CD

A Hardeman County jury convicted the Defendant, Joseph Griggs, of aggravated rape, and the trial court sentenced him to twenty years in the Tennessee Department of Correction. On appeal, the Defendant asserts that the evidence is insufficient to support his conviction and that the trial court erred when it sentenced him.  After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Bo Burk, District Public Defender; Shana McCoy Johnson, Assistant District Public Defender, Somerville, Tennessee; and Matthew C. Edwards, Bolivar, Tennessee, for the appellant, Joseph Griggs.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Joe L. VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's rape of the victim, his thirteen-year-old cousin, in the bedroom of her aunt's house.  Based on this conduct, a Hardeman County grand jury indicted the Defendant for aggravated rape.

### A. Trial

The following evidence was presented at the Defendant's trial: The victim testified

that she was fifteen years old at the time of trial on September 9, 2019. In March of 2018, over the victim's spring break week, the victim went to stay with her aunt, who was hosting approximately fifteen of her relatives, including her cousin, the Defendant. The Defendant, whom she identified in the courtroom, was present at her aunt's house every night of the victim's stay. The victim testified that, one night, the Defendant raped her while she had been sleeping. The victim awoke to find the Defendant on top of her, following which he pulled her pants down and put his penis inside her vagina. The Defendant also penetrated her vagina with his fingers. The victim said that "it hurt" but that she did not scream because she was scared.

While the Defendant remained in the bedroom, the victim sent a text message to her best friend, D.R.[1], describing what had happened and asking her to call the police. The police responded to the residence, and the victim was taken to the hospital. The victim testified that the rape caused her to bleed and that blood ran down her leg.

On cross-examination, the victim testified that there were other people in the bedroom when the rape occurred: the Defendant's kids and their cousins, whom the victim listed by name. The victim recalled that the other girls in the room were sleeping on the bed but that she was sleeping on the floor with the boys. The victim's siblings were in the house but not asleep in the same room as her.

On redirect-examination, the victim testified that she called the police, as did D.R., at the victim's request. The victim testified that she did not say anything while on the line with the emergency dispatcher and that the Defendant was still in the room at the time. The victim remained on the line, silent, for about a minute and then hung up. She clarified that the Defendant was standing at the foot of the bed but that the phone was concealed by the bedcover. She testified that he left the room when the police arrived at the residence.

On recross-examination, the victim stated that she had the covers pulled up over her head while the Defendant raped her. After the incident, the victim remained under the covers while the Defendant talked to her. The other males in the room at that time were children. The victim testified that she was "positive" that the person raping her was not one of the male children in the room. She agreed that she had the covers pulled over her head when the Defendant pulled her pants down.

On redirect-examination, the victim testified that she did not see the Defendant while he was raping her but saw him when he left the room.

D.R. testified that she was a friend of the victim's and received a text message from the victim in March 2018 asking her to call for help because the victim had been raped. With help from her relatives, D.R. called the police and provided an address given to her

---

[1] It is the policy of this court to refer to minors by their initials.

by the victim.

Investigator Chris Burkeen testified that he was employed by the Bolivar Police Department and was dispatched to a residence regarding a report of the rape in this case. There had been a "9-1-1 hang up" call from that address, as well as the call from the third party. Investigator Burkeen testified that he arrived at the residence around 2 a.m. and had to "knock hard" at the residence to get a response. The homeowner, Tracey Wright, answered the door with the victim standing behind her. Investigator Burkeen asked the victim if she had called the police, and she replied that she had. He asked the victim if she was alright, and the victim "collapsed, fainted." Investigator Burkeen called for an ambulance, and the victim began to "come back" as the ambulance was arriving. Investigator Burkeen accompanied the victim in the ambulance to the hospital. The victim's father arrived at the hospital, and then Investigator Burkeen questioned the victim about what had happened to her; she told him that the Defendant had "done this to her." Investigator Burkeen collected the victim's clothes as evidence, and a rape kit was performed on her.

Investigator Burkeen ascertained that the Defendant had existing arrest warrants in Fayette County, so Investigator Burkeen requested that county officers apprehend and detain the Defendant. Investigator Burkeen then interviewed the Defendant at the Fayette County Sheriff's Department, which was audio and video recorded. Investigator Burkeen was assisted in the interview by Investigator Futrell. The recording was played aloud for the jury. A copy of the recording is not included in the record on appeal.

On cross-examination, Investigator Burkeen testified that there were more than twelve people inside Ms. Wright's residence when he arrived; some were asleep and some were awake. He went into the bedroom where the victim stated the rape had happened and there were four to five small children in there, and the same number in the other rooms. Investigator Burkeen did not observe any blood on the victim during his time at the residence.

Mary Cole, a Sexual Assault Nurse Examiner at Jackson General Hospital, testified that she treated the victim on March 21, 2018, who had arrived at the hospital at 5:34 a.m. Ms. Cole described the victim as "trembling" with "some tenseness" and "generally quiet." The victim complained that her vagina was hurting and stated that she had been vaginally assaulted by the Defendant putting his fingers and penis in her vagina. The victim reported that this incident was her first sexual contact. Ms. Cole performed a physical examination of the victim and stated that there were obvious injuries to her vagina. The victim was experiencing "significant" vaginal pain during the examination. Ms. Cole described the victim's vagina as "swollen" and "irregular," and her exam of the victim revealed some bleeding. She stated that the victim's vaginal tissue was torn and that she observed three or four "distinct" scratches to the area. The victim described it as being painful to urinate, which was consistent with the observed injuries.

3

The Defendant testified that he was at his mother's house on March 20, 2018, during the evening and that he left around 11 p.m. to visit his father in Bolivar. The next morning, he heard about the victim's rape and that she had accused him. The Defendant denied raping the victim.

On cross-examination, the Defendant denied telling police that he had engaged in sexual intercourse with the victim. He testified that he was shaken up during the interview and did not intend to say they had engaged in a sexual act. He explained that, "if [he] would have had sex with her it would have been consensual," which is what he was attempting to explain during the interview.

Based upon the evidence presented at trial to the jury, the jury convicted the Defendant of aggravated rape. At the sentencing hearing, the presentence report was admitted as an exhibit. No further evidence was presented. The trial court stated that it had considered the evidence presented at trial and at sentencing, the nature and characteristics of the Defendant's conduct, the relevant enhancement and mitigating factors, and the Defendant's potential for rehabilitation and treatment. The trial court stated that aggravated rape was a Class A felony with a sentencing range of fifteen to twenty-five years with no possibility of probation or an alternative sentence. The sentence was to be served at 100% as required by Tennessee Code Annotated section 40-35-501.

The trial court applied two enhancement factors: first, that the victim's age made her particularly vulnerable, *see* Tennessee Code Annotated section 40-35-114(4) (2020), and second, that the offense was committed to gratify the Defendant's desire for pleasure or excitement, *see* Tennessee Code Annotated section 40-35-114(7) (2020). In light of these factors, the trial court imposed a sentence of twenty years. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant asserts that the evidence is insufficient to support his conviction and that the trial court erred when it imposed an enhanced sentence within the applicable range.

### A. Sufficiency of Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction. He contends that there was insufficient proof that he was person raping the victim because she had the covers pulled over her head and was raped in a room where multiple other people slept. He further contends that the State did not prove the element of "bodily injury." The State responds that the victim explicitly identified the Defendant as her rapist and that the proof is sufficient to sustain his conviction for rape and to support the element of bodily injury. We agree with the State.

4

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "'strongest legitimate view of the

5

evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Relevant to the Defendant's argument that there was insufficient proof that he was the rapist, the evidence presented and viewed in the light most favorable to the State, was that the Defendant entered the room in which the victim was sleeping, got on top of her, and penetrated her vagina with his penis and fingers. The victim saw him leaving the bedroom after the rape; she later told law enforcement that he was the rapist, and she identified him in the courtroom as the perpetrator. The victim called police, had a friend call police, and was taken from her aunt's house by ambulance to a hospital where the treating physician saw that she suffered vaginal injuries consistent with a rape. This was sufficient evidence from which the jury could conclude that the Defendant committed the rape.

Aggravated rape, found at Tennessee Code Annotated section 39-13-502, requires proof of, as charged here, "unlawful sexual penetration of a victim by the defendant . . . accompanied by any of the following circumstances: . . . bodily injury to the victim." T.C.A. § 39-13-502(a)(2) (2018). The evidence viewed in the light most favorable to the State was that the victim awoke to find the Defendant on top of her and then he pulled her pants down. He inserted his penis, as well as his fingers, into her vagina. A physical examination of the victim revealed the presence of signs of traumatic penetration, including tearing and swelling, and her examiner, Ms. Cole, testified that the victim was obviously in pain following the rape. This is sufficient evidence from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of aggravated rape accompanied by bodily injury.

Embedded in his sufficiency argument, the Defendant also contends that the indictment listed the element of "a person less than thirteen (13) of age," which he asserts is not an element of aggravated rape, and the inclusion of which he contends was inflammatory and misleading to the jury. We agree with the State's argument that the Defendant has waived this issue for failure to raise it during trial or at the motion for new trial. *See* Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a). The Defendant is not entitled to relief on this issue.

## B. Sentencing

The Defendant also contends that the trial court erred when it imposed a sentence greater than the minimum within the applicable range. The State replies that the trial court

properly sentenced the Defendant to a within-range sentence and that it did not abuse its discretion in doing so.  We agree with the State.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012).  A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).  To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision.  *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).  The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10.  So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only.  *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008).  Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345.  In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343 (quoting Tenn. Code Ann. § 40-35-210(d)).  Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

The trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made on the defendant's own behalf about sentencing.  *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

At sentencing, the trial court applied two enhancement factors, factor (4), related to the victim's young age, and factor (7), based on the fact that the Defendant committed this

7

offense for his own sexual pleasure. T.C.A. § 40-35-114(4), (7) (2020). The evidence at trial showed that the thirteen-year-old victim was staying at her relative's house for spring break with a large group of relatives, in the care of an adult relative who owned the home. It appears that the Defendant used his access to the home to also access the victim and then rape her in her sleep. *See State v. Kissinger*, 922 S.W.2d 482, 490 (Tenn. 1996) (stating that factor (7) "applies anytime an offender commits an applicable offense to gratify the offender's desire for any pleasure or any excitement.) Based on this evidence, we conclude that the Defendant has not established that the trial court abused its discretion by enhancing his sentence within the applicable range. The Defendant is not entitled to relief.

## III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE